43072. GOSS v. THE STATE.
(341 SE2d 448)

GREGORY, Justice.

Martha Goss was convicted of murder and sentenced to life imprisonment.[1] She was also convicted of theft by taking of a motor ve-

---

[1] The crime was committed on August 18, 1985. The defendant was indicted on August 28, 1985. A Lowndes County jury found the defendant guilty on November 6, 1985. She was sentenced on November 8, 1985. Notice of Appeal was filed in this court on November 26, 1985. The transcript of the proceedings was certified on December 16, 1985, and the case was docketed on January 3, 1986. The case was submitted for decision on February 14, 1986.

hicle and concealing a death and sentenced to terms of 10 years and 12 months, respectively. We affirm.

From the evidence at trial, the jury could have found that on August 17, 1985, Goss was living and working as a housekeeper in the home of J. C. Corbett. That afternoon, Goss and Corbett went to a fish fry at the home of Wanda Lee Howard. The couple argued throughout the afternoon. At around 6 p.m., they left the fish fry with Howard's four-year-old daughter who was going to spend the night with them. On their way home, they picked up Houston Holmes.

Sometime after dark, Corbett and Holmes were sitting in chairs drinking beer in the yard of Corbett's home. Goss heard a noise in her chicken yard and came out of the house with a .410 shotgun. She fired one shot in the air. Corbett told Goss to stop shooting. Goss then told Corbett, "Old man, you don't believe I'll kill you, do you," and shot Corbett in the mouth. Goss and Holmes carried the body in a wheelbarrow to a well and dumped it inside. They later threw the shotgun and wheelbarrow in a nearby river.

At around 2:15 a.m. on August 18, the two went to the home of Wade Flythe. They asked to borrow $15 so they could go to Augusta to see Goss' children. Goss and Holmes then went to the home of Ulysses Wright at around 2:30 a.m. and asked Wright for a $15 loan. Wright told them he could make the loan in the morning, but they replied they needed it then to "get out of town or go to prison." Goss and Holmes next showed up at Wanda Lee Howard's home at around 3 a.m. and returned her daughter. They said there was an emergency in Augusta and asked to borrow money. Howard went outside and noticed Corbett's car packed full with clothes, a television, a video cassette recorder and a stereo.

Meanwhile, sheriff's deputies had arrived at Corbett's house at around 2 a.m. because it was on fire. Deputies searched the rubble for bodies, but found none. The officers noticed the nearby well had wood piled on top. A civil defense squad removed the wood and some tin and found Corbett's body. The deputies also found a chair in the yard stained with blood. A trail of blood led from the chair to the well.

Goss and Holmes drove to several cities throughout Georgia. After arriving in Augusta, the couple split up. On August 24, 1985, Holmes surrendered to Atlanta police and Goss was arrested soon after in Augusta. They were jointly indicted for murder, theft by taking, arson and concealing a death. Holmes pled guilty to theft by taking and concealing a death, and testified at Goss' trial.

At the trial, Goss claimed the shooting was an accident. She said she heard a noise in the chicken pen and was trying to scare off an intruder. According to Goss, she was trying to take a shell out of the shotgun when it accidentally discharged and hit Corbett in the mouth. Goss testified Holmes put the body in the well.

1. Goss contends the trial court .erred in admitting three photographs of the victim's body because the pictures were repetitious and inflammatory. All three photographs were taken of the body lying on the ground at the crime scene soon after removal from the well. One shot shows the entire body, and the other two are closeups of the face depicting the gunshot wound to the mouth.

Photographs which are material and relevant to any issue are admissible even though they may be duplicative and inflame the jury. See *Simon v. State*, 253 Ga. 681 (2) (324 SE2d 455) (1985); *Ramey v. State*, 250 Ga. 455 (1) (298 SE2d 503) (1983). Compare *Brown v. State*, 250 Ga. 862 (302 SE2d 347) (1983). We find the trial court properly admitted the photographs into evidence.

The State had the burden to prove beyond a reasonable doubt that Goss caused the death of J. C. Corbett with malice aforethought. The State's contention was that she had done so by shooting Corbett with a .410 gauge shotgun. The photographs were relevant to this issue. Three photographs depicting Corbett's body were not unduly repetitious. That they were inflammatory does not render them inadmissible.

2. Goss contends the trial court erred in preventing her attorney from conducting a thorough and sifting cross-examination of witness Wanda Lee Howard.

Goss' counsel questioned Howard's account of fighting between Goss and Corbett at a fish fry the afternoon before the murder. Howard had just testified that Goss told Howard's husband she was a good shot with a shotgun when defense counsel said. "Um. That's coincidental, isn't it?" The trial court instructed the attorney, ". . . [W]e can do without the extraneous comments. You'll be given an opportunity to make a summation to the Jury later."

Goss claims the trial court restricted her attempt to prove Howard's account of the conversation was false, and resulted from bias and prejudice because of Howard's close friendship with the victim. However, a review of the transcript reveals the defense attorney was allowed to continue with cross-examination after the trial court's admonition. The court's restriction was to the form of the attorney's comment only, and the record reflects the court did not prohibit pursuit of the line of questioning. We find no error.

3. Goss next contends the trial court erred in not reading the entire indictment in its charge to the jury. Goss and Holmes were jointly indicted for murder, theft by taking, arson and concealing a death. The trial court read the indictment in its entirety, except that the name of Holmes was omitted. Goss claims a major portion of her defense was the attempted impeachment of Holmes and that the omission of Holmes' name unduly influenced the jury.

Trial courts are not required to read the indictment to the jury.

See *Benefield v. State*, 148 Ga. App. 211 (1) (251 SE2d 78) (1978). In *Benefield*, the court found the jury was aware of the evidence and had the indictment with it during deliberations, and thus the trial court did not err in failing to read the indictment.

Here, the jury had the indictment and could have read it during deliberations. Goss' counsel extensively cross-examined Holmes about his guilty plea and negotiations with the prosecutors. Through the questioning, Goss pointed out that Holmes was a co-indictee with Goss, and that murder and arson charges were dropped as Holmes pled guilty to theft by taking and concealing a death a few days before Goss' trial. Defense counsel was at liberty to point out Holmes' indictment during closing argument. We, therefore, find the omission of Holmes' name from the jury charge did not restrict Goss' effort to impeach and was not error.

4. We have reviewed all the evidence in light of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), and, despite Goss' contention to the contrary, find in the light most favorable to the jury's verdict that a rational trier of fact could have found Goss guilty beyond a reasonable doubt of murder, theft by taking and concealing a death.

*Judgment affirmed. Marshall, C. J., Clarke, P. J., Smith, Weltner and Bell, JJ., concur.*

DECIDED APRIL 9, 1986.

*Edwards, Edwards & Edwards, William D. Edwards,* for appellant.

*H. Lamar Cole, District Attorney, Michael J. Bowers, Attorney General, Dennis R. Dunn, Staff Assistant Attorney General,* for appellee.