## 44658. KETTMAN v. THE STATE.
(362 SE2d 342)

BELL, Justice.

The appellant, Michael Kettman, was convicted of the felony murder of Terry Finger, and received a life sentence.[1] Kettman now appeals, and we affirm.

Kettman, an eighteen-year-old graduate of North Cobb High School, had been having an affair with the victim's wife. On Saturday evening, February 22, 1986, Kettman enlisted sixteen-year-old Elizabeth Rizzi to drive him to the victim's house. Rizzi testified that Kettman had told her he was having an affair with the victim's wife, and that he did not like her husband. Rizzi and Kettman met about 9:30 p.m. at a local McDonald's, where Kettman changed into all dark clothes in the men's room. Rizzi said that she drove by the victim's house once and that Kettman instructed her to drive to a nearby school. Once at the school Kettman got out of the car and took off her license plate. He told her that he had a gun and that he wanted to scare the victim. He said that he did not want anyone to see the tag number on the car.

Upon leaving the school Rizzi drove back to the victim's house. Kettman had Rizzi let him out just up the street from the victim's house. He told Rizzi to stop the car in front of the victim's house and to knock on the front door. He asked her to tell the victim that her car had broken down and to ask for help. Rizzi did so, and the victim then went to the car with Rizzi. He asked her to try to start the car, but it failed to start because she had it in neutral. The victim then started back to his house, saying he was going to get some jumper cables. As he was crossing the lawn, Rizzi saw Kettman approach the victim, and point a gun at him. She heard the victim scream, "Please, God, no, don't," and then saw Kettman shoot the victim. She heard five or six shots and then a clicking sound.

Kettman ran to the car, and he and Rizzi left. Rizzi said that Kettman instructed her to drive without headlights for a few blocks before turning them on. According to Rizzi, Kettman said that he had

---

[1] The crime occurred on February 22, 1986, and Kettman was indicted for murder on April 17, 1986. Kettman was tried on October 6-9, 1986. The jury returned its verdict of guilty on October 9, and Kettman was sentenced on that same date. Kettman filed a motion for new trial on November 3, 1986, and the motion was denied on April 2, 1987. Kettman filed a notice of appeal on April 14, 1987. The case was docketed in this court on May 11, 1987, and was submitted for decision without oral arguments on June 26, 1987.

set the victim's wife free and that she soon would be coming into some money. Kettman had Rizzi drive to Lake Allatoona, where he threw the gun into the lake. Kettman then put Rizzi's license plate back on, and had Rizzi drive back to McDonald's, where Kettman changed into the clothes he first had on.

Bonnie French, a teacher at North Cobb High School, testified that in late 1985 Kettman told her he was having an affair with the victim's wife and that he had hired a "hit-man" to kill the victim for $100.

The afternoon following the crime Kettman was stopped by the police.[2] He gave a statement, which was admitted into evidence after a *Jackson-Denno* hearing. Kettman essentially recounted the events testified to by Rizzi. He also stated that he hated the victim, and that "whatever I get, I deserve."

1. Having examined the transcript, we conclude that the evidence was sufficient to authorize a rational trier of fact to find Kettman guilty of felony murder beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. In his first three enumerations of error Kettman contends that five photographs of the victim were erroneously admitted, because they were duplicative and inflammatory. We disagree. Three of the photographs show the victim's entire body in relation to the house, and while they may be somewhat repetitive, they are not gruesome. The other two photographs in question are close-up shots of the victim's head, displaying the fatal wounds. These five photographs were relevant to display the scene of the crime and the victim's fatal wounds, and were not unduly repetitious. We thus conclude that their admission into evidence was not erroneous. See *Goss v. State*, 255 Ga. 678, 680 (1) (341 SE2d 448) (1986); *Simon v. State*, 253 Ga. 681, 682 (2) (324 SE2d 455) (1985).

3. In his fourth enumeration Kettman contends that the trial court's charge on flight impermissibly shifted the burden of proof to him to explain why he left the scene of the crime. This contention has been decided adversely to Kettman. *Lingerfelt v. State*, 255 Ga. 180, 182 (5) (336 SE2d 250) (1985); *Leverett v. State*, 254 Ga. 691, 691-692 (2) (333 SE2d 609) (1985).

4. Kettman contends, in Enumeration Five, that the trial court erred in charging on felony murder. He first asserts that aggravated assault cannot serve as the underlying felony for felony murder. He urges us to adopt the rule that only felonies independent of the conduct resulting in death can be used to support a felony murder conviction. We have previously rejected this rule, *Cole v. State*, 254 Ga.

---

[2] See Division 8, infra, for details concerning the stop.

286, 288 (2) (329 SE2d 146) (1985); *Baker v. State*, 236 Ga. 754 (1) (225 SE2d 269) (1976), and we decline to adopt it now.

Kettman also contends that the indictment did not put him on notice that he was charged with the felony of aggravated assault. The indictment charged Kettman with the offense of murder, in that he "did unlawfully with malice aforethought and while in the commission of a felony, to wit: aggravated assault, cause the death of Terry Lee Finger . . . by shooting him with a pistol." This indictment did give Kettman notice that he was alleged to have committed an aggravated assault on the victim and that this felony could be used as a basis for a felony murder conviction. We find no error in the court's charge on felony murder. See *Catchings v. State*, 256 Ga. 241, 244-245 (6) (347 SE2d 572) (1986); *Jolley v. State*, 254 Ga. 624, 627 (2) (331 SE2d 516) (1985).

5. In his sixth enumeration Kettman contends that the trial court erred in charging the jury on the state's burden of proof. The portion of the charge in question is as follows: "Jurors, every person is presumed innocent until proved guilty and no person shall be convicted of a crime unless each essential element of a crime is proved beyond a reasonable doubt and this proof must be to the satisfaction of the jury. The state has the burden of proving each essential element of crime that is charged in the bill of indictment beyond a reasonable doubt."

Kettman contends that the language, "this proof must be to the satisfaction of the jury," conveyed to the jury that they could convict him if they were satisfied with the evidence, whether they were satisfied beyond a reasonable doubt or not. We disagree. Viewing the charge as a whole, see *Catchings*, supra, 256 Ga. at 748, we find that the charge was not misleading, and that it properly instructed the jury that they had to be satisfied that the state proved the defendant's guilt beyond a reasonable doubt.

6. In his seventh enumeration of error Kettman contends that the following charge on character was improper: "I charge you that evidence of good character is admitted as evidence of a positive fact and it may of itself by the creation of a reasonable doubt produce an acquittal." This instruction is not erroneous. *Cook v. State*, 256 Ga. 808, 810-811 (1) (353 SE2d 333) (1987).

7. In his eighth enumeration of error Kettman contends that the trial court's charge on the prior difficulties between Kettman and the victim shifted the burden of proof to him. The charge was as follows: "I further charge you that evidence of prior difficulties between a defendant and an alleged victim has been entered into the evidence in the case, and is admitted for your consideration solely and only for the purpose of its illustrating, if it does so illustrate, the state of feelings between the defendant and the alleged victim, and the bent of

mind and the course of conduct of the defendant in the case."

Evidence of previous difficulties between a defendant and a victim is admissible to show the defendant's intent, bent of mind, and course of conduct. *Rainwater v. State*, 256 Ga. 271, 272 (1) (347 SE2d 586) (1986); *Cooper v. State*, 256 Ga. 234 (1) (347 SE2d 553) (1986). Kettman, however, argues that the court's charge impermissibly shifted the burden to him to show that he did not intend to kill the victim. We disagree. The jury was clearly instructed that the state had the burden to prove all elements of the crime, including intent, beyond a reasonable doubt. The charge on prior difficulties merely informed the jury that the evidence of prior difficulties was a piece of evidence they could use in resolving the question of bent of mind and course of conduct (and therefore intent insofar as bent of mind and course of conduct relate thereto). It was necessary to give a special charge on previous difficulties so that the jury could be instructed that the evidence could be considered only for limited purposes. We conclude that the charge did not shift the burden of proof to Kettman on the issue of intent.

8. Kettman contends, in enumeration nine, that the trial court erred in allowing Bonnie French to testify that Kettman made a threat against the victim's life. Contrary to Kettman's assertion, this evidence was properly admitted. *Beal v. State*, 255 Ga. 446, 447 (2) (339 SE2d 581) (1986).

9. In his tenth enumeration of error Kettman contends that the trial court erred in denying his motion to suppress the statement he gave to the police. Kettman argues that the statement should have been suppressed because it was the result of an illegal stop. We disagree.

At the suppression hearing Officer Ronald Bass of the Cobb County Police Department testified that shortly after the murder the police received an anonymous call suggesting that Kettman should be investigated for the victim's murder and for a previously unsolved bombing attempt of the victim's car. Bass also testified that the morning following the murder he interviewed Birdy Lewelyn, a friend of the victim's wife, who related information concerning the affair Kettman had been having with the victim's wife and some threats that had been made by Kettman on the victim's life. Acting on this information, two officers were assigned to watch the Kettman house. When Kettman left the house in his car the officers were instructed to stop Kettman and check his identity to make sure that he was, in fact, Kettman, and to ask if he would be willing to discuss the death of the victim. When Kettman was stopped and asked for his driver's license, he did not have one. Kettman was then arrested for driving without a license, and placed in a police car. Officer Bass told Kettman that he had been arrested for driving without a license, and

that the officer would, if Kettman wanted, take Kettman to the Cobb County Jail, where he could post bond and then go home. The officer also told Kettman that he would like to question Kettman about the shooting of Terry Finger. Kettman said that he would be glad to talk about it. Bass then took Kettman to the police station where he received his *Miranda* rights and made the statement in question.

Kettman argues that, because he was not breaking any traffic laws at the time of the stop and because the police had no suspicion that a crime was in progress or about to be committed the initial stop was not justified under *Terry v. Ohio*, 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968). We disagree. First, we note that, in addition to situations where there is an articulable suspicion that a suspect is involved in a crime or is about to be involved in a crime, a *Terry* stop can be made where there is an articulable suspicion that a suspect was involved in a completed felony. *United States v. Hensley*, 469 U. S. 221, 227-229 (1) (105 SC 675, 83 LE2d 604) (1985). See also *Watson v. State*, 159 Ga. App. 618, 619 (284 SE2d 636) (1981). Moreover, the fact that Kettman was not breaking any traffic laws at the time is of no import if, as the state urges, the state had an articulable suspicion that Kettman had been involved in the death of Terry Finger. We conclude that the anonymous call implicating Kettman in the murder and the previous bombing, coupled with Lewelyn's statement that Kettman had been having an affair with the victim's wife and had threatened the victim's life, gave the police the basis for an articulable suspicion justifying the stop of Kettman's car.

10. In his eleventh enumeration Kettman contends that his statement was not voluntary because the officers induced him to make the statement by offering him a "hope of benefit," see OCGA § 24-3-50, through statements such as, "the only thing that can help anybody out at a time like this is the truth," and "we're here for you." We disagree. This court has construed the "slightest hope of benefit" as meaning the hope of a lighter sentence. *Cooper v. State*, supra, 256 Ga. at 235-236; *Caffo v. State*, 247 Ga. 751, 757 (3) (279 SE2d 678) (1981). We have also held that " '[f]or an officer to advise an accused that it is always best to tell the truth will not, without more, render a subsequent confession inadmissible under [OCGA § 24-3-50].' " *Caffo*, supra, 247 Ga. at 757, quoting *Tyler v. State*, 247 Ga. 119, 122 (274 SE2d 549) (1981). We conclude that the statements by the officers which are in question were not an impermissible inducement or hope of benefit.

11. In his twelfth enumeration Kettman contends that the state impermissibly placed his character in issue when a police officer testified that the police department had an officer in the intelligence section pull a file on Kettman to obtain his address. We have previously held that neither testimony "that the police identified [a defendant's]

fingerprint by comparing it to a print that the police already had on file," *Lewis v. State*, 255 Ga. 681, 682 (2) (a) (341 SE2d 434) (1986), nor testimony that a police officer had found a picture of a defendant in his files, *Woodard v. State*, 234 Ga. 901, 902 (218 SE2d 629) (1975), placed the character of the defendants into issue. The testimony objected to in the instant case falls into this category of permissible disclosures that police files contain information on defendants. Accordingly, we hold that Kettman's character was not improperly placed into issue.

*Judgment affirmed. All the Justices concur.*

DECIDED NOVEMBER 19, 1987.

*Jimmy Dodd Berry, William D. Cooper,* for appellant.

*Thomas J. Charron, District Attorney, Nancy I. Jordan, James F. Morris, Rose L. Wing, Assistant District Attorneys, Michael J. Bowers, Attorney General, Eddie Snelling, Jr., Assistant Attorney General,* for appellee.