### 76378. JONES v. THE STATE.
(370 SE2d 784)

BIRDSONG, Chief Judge.

Appellant, James Warren Jones, was convicted of two counts of burglary. He appeals basing his sole enumeration of error on the trial court's denial of his motion to suppress. Specifically, appellant asserts that the search of his automobile was based on an "improper inventory search where the appellant's automobile was not a hazard to traffic nor was it related to the appellant's arrest, nor was he given the choice of an alternate disposition to the impoundment" of the automobile.

At approximately 3:00 a.m., Patrolman Cranor of the Henry County Sheriff's Department observed a late model blue Chevrolet Nova automobile driving alongside of a church. The church was closed and locked. Burglaries had been prevalent in this area, and this particular church had been burglarized in the past. The vehicle turned off its lights and subsequently exited the church parking lot after turning its lights on again. Patrolman Cranor followed the vehicle, which was going at an "extremely slow speed"; the vehicle was proceeding at about 25 miles per hour in a 55 mph zone on Highway 42. The driver of the vehicle was turning his head from side to side

"like he was looking for something." Patrolman Cranor observed that from the time he saw the vehicle operator until he hailed it to stop, the driver acted "extremely nervous." Further, the police had a recent lookout sheet on a 1969 blue Nova.

In view of these facts, Patrolman Cranor initiated a tag check of the vehicle. The vehicle pulled off the highway into the parking lot of a closed Tastee Freeze. The appellant was the driver and sole occupant of the vehicle. The patrolman obtained appellant's driver's license and insurance card, and asked appellant why he was at the church at that time of the morning. The appellant did not immediately respond, but then stated that he was waiting for his employer. Certain of appellant's responses were "vague and sketchy," and when he finally did give phone numbers of two individuals, these persons could not be contacted. As a standard police procedure, Patrolman Cranor initiated a "wanted records check" on the appellant and his car, and requested the appellant to exit his vehicle. When the appellant got out of his car, Patrolman Cranor observed that there appeared to be a lot of items therein, including some new clothes and shoes. Patrolman Cranor received a radio call confirming that a vehicle of the same general description of appellant's car had been involved in a Rockdale County burglary. The lookout sheet also indicated that the wanted vehicle had a Newton County decal on its license plate and appellant's license plates were issued in Newton County. At this point, the patrolman learned via his radio that appellant was on parole. Appellant's parole officer was contacted and verified that appellant was in violation of the "midnight curfew" terms of his parole. Patrolman Cranor then arrested the appellant and commenced standard arrest procedure. It is part of this standard procedure to impound a vehicle of an arrested individual if no one else is present in the vehicle who can take possession of it. Accordingly, Patrolman Cranor and a deputy named Wiggam began an inventory of the vehicle's contents. The inventory was conducted "strictly to inventory the items for [the police's] protection and [appellant's] protection as well as before the vehicle is impounded." However, the contents of the vehicle's trunk were not inventoried as the officers did not have a trunk key and could not gain access.

Subsequently, Detective Boswell of the Rockdale County Sheriff's Department was contacted by another Henry County Sheriff's Department investigator. Based on a request from Detective Boswell and information that he supplied for a search warrant affidavit, a search warrant was obtained for appellant's vehicle. More items were found when the search warrant was executed, including some blank checks belonging to one of the burglary victims. *Held*:

In considering the legality of the search of appellant's car, this court can consider all relevant evidence of record, including that ad-

duced at the suppression hearing as well as at trial. *Sanders v. State,* 235 Ga. 425, 431-432 (Sec. II) (219 SE2d 768), cert. den. 425 U. S. 976; *Stapleton v. State,* 235 Ga. 513 (1) (220 SE2d 269).

Our review of the operative facts attendant the stopping of appellant's vehicle for a tag check satisfies us that the stop was lawful and did not constitute an unlawful seizure within the meaning of the Fourth Amendment. In *Florida v. Royer,* 460 U. S. 491, 498 (103 SC 1319, 75 LE2d 229), the Supreme Court held that "not all seizures of the person must be justified by probable cause to arrest for a crime. . . . [C]ertain seizures are justifiable under the Fourth Amendment if there is articulable suspicion that a person has committed *or is about to commit a crime.* . . . Although not expressly authorized in *Terry [v. Ohio,* 392 U. S. 1 (88 SC 1868, 20 LE2d 889)], *United States v. Brignoni-Ponce,* 422 U. S. 873, 881-882 (1975), was unequivocal in saying that reasonable suspicion of criminal activity warrants a temporary seizure for the purpose of questioning limited to the purpose of the stop." (Emphasis supplied.) See generally *Kettman v. State,* 257 Ga. 603 (9) (362 SE2d 342); *Coley v. State,* 177 Ga. App. 669 (1) (341 SE2d 9). Thus, neither the stopping of appellant nor the observation of certain items of property in *plain view* as appellant exited his vehicle, see, e.g., *Catchings v. State,* 256 Ga. 241 (10) (a) (347 SE2d 572), tainted any subsequent search of appellant's vehicle.

Before the inventory search of the compartment of appellant's automobile commenced, the appellant was placed under lawful arrest for a parole violation. See, e.g., OCGA § 42-9-42(e); 42-9-44. "[I]f probable cause to arrest exists [as it did in this case], a warrantless arrest is lawful." *Ledesma v. State,* 251 Ga. 487 (3) (306 SE2d 629). A policeman who has made a lawful custodial arrest of the occupant of an automobile may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile. *Coley v. State,* supra at (1), citing *New York v. Belton,* 453 U. S. 454, 460 (101 SC 2860, 69 LE2d 768). Thus, we are satisfied that any search of appellant's automobile would have been *reasonable,* under all of these attendant circumstances, within the meaning of the Fourth Amendment.

Further, we are satisfied that, although other legitimate grounds may well have justified Patrolman Cranor's search of appellant's vehicle, his conduct was motivated by his desire to conduct a routine police inventory of the contents of the vehicle. In this regard, we note that numerous items had already been observed by the officer in plain view, and this inventory was accomplished for both the police's and the appellant's protection before the vehicle was impounded. At that moment, the police were in lawful possession of appellant's vehicle, and it was proper to make a good-faith inventory of its contents. See

*Ledesma v. State*, 251 Ga. 885 (2) (311 SE2d 427), cert. den., 467 U. S. 1241. Appellant's contention, that "[w]here there is no evidence of a connection between the automobile and the basis of the arrest, no evidence that the automobile is a hazard to traffic or illegally parked, and no evidence that the driver was consulted about an alternative disposition of the automobile," that this court should suppress the fruits of an inventory, is without merit. *Mooney v. State*, 243 Ga. 373, 376-377 (254 SE2d 337). "It is well established that a police seizure and inventory is *not* dependent for its validity upon the absolute necessity for the police to take charge of property to preserve it. They are permitted to take charge of property under much broader circumstances than that." (Emphasis supplied.) Id. at 375. In each instance, *the ultimate test for the validity of the police's conduct is whether, under the circumstances then confronting the police, their conduct was reasonable within the meaning of the Fourth Amendment.*

Given the facts of this case, " 'it was reasonable for the officers to take the car whenever it was most convenient for them to do so; and presumably it was most convenient immediately following the arrest.' " Id. at 376. Moreover, in this case the officer's immediate seizure of the car was warranted on grounds well beyond convenience. There was some danger involved in allowing the car to sit unattended in a public parking lot of a drive-in business. The car might have been stolen or damaged while standing there; or, the numerous items of property in plain view within the car might have been stolen. Conversely, it would have been grossly unreasonable to expect the police, at 3:00 a.m., to waste their valuable law enforcement time attempting to find someone to accept the vehicle and its contents on the appellant's behalf. In this regard, we note that the police were unable to contact anyone at the phone numbers previously provided by the appellant. But assuming the police ultimately could have found someone to take possession of the vehicle, they were not required to attempt to do so. Once they lawfully arrested the appellant, the police become responsible for timely safeguarding his property, until it could be lawfully disposed of, *in the ordinary course of police business.*

*Judgment affirmed. Banke, P. J., and Beasley, J., concur.*

DECIDED JUNE 3, 1988.

*John J. Martin, Jr.,* for appellant.
*Robert F. Mumford, District Attorney, William F. Todd, Jr., Assistant District Attorney,* for appellee.