S90A1110. HARRIS v. THE STATE.
(401 SE2d 263)

BENHAM, Justice.

Following the death of his four-month-old daughter due to head injuries, appellant was indicted for murder, felony murder, and cruelty to a child, and was convicted of all three. He was sentenced to

---

life imprisonment for murder and to 20 years imprisonment for cruelty to a child, to be served consecutively to the life sentence. No sentence was entered on the conviction for felony murder because that conviction was vacated by operation of law. *Wade v. State*, 258 Ga. 324 (2) (368 SE2d 482) (1988).[1]

1. Appellant asserts that since the testimony of certain expert witnesses was excluded because of the State's failure to provide the defense with copies of the witnesses' written scientific reports, the State did not bear its burden of proving beyond a reasonable doubt that appellant's daughter died and that she died as a result of criminal conduct on the part of appellant. Our review of the record persuades us otherwise.

Circumstantial evidence which excludes every other reasonable hypothesis save that of the guilt of the accused is sufficient to sustain a conviction for murder. *Smith v. State*, 250 Ga. 729 (300 SE2d 798) (1983). In the present case, there was testimony that paramedics responding to a call that a child had stopped breathing found appellant's daughter without breath or pulse; that she had bruises, contusions, scratches and bite marks on her body, including a bite on her leg so recent that the bruising developed while treatment was underway; that she was transported to a hospital after her heart was started and she was put on a machine to assist breathing; that she had massive retinal hemorrhaging and was brain dead; that severe neurological injuries sufficient to cause death were suffered by the victim; that an autopsy was performed on appellant's daughter; and that appellant's admitted conduct in throwing the victim onto a bed and shaking her would produce the fatal injuries.

It is the rule in Georgia that in review of a criminal conviction, the evidence is viewed in a light favorable to the verdict. [Cit.] The evidence in this case according to our standards and to those set out in *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), is sufficient to authorize a rational jury to find [appellant] guilty of murder [and cruelty to a child] beyond a reasonable doubt. [*Smith v. State*, supra at 730.]

2. In a statement to the police, appellant admitted inadvertently

---

[1] The crimes occurred on November 15, 1988. Appellant was indicted by the grand jury of Dougherty County on January 24, 1989. Trial commenced on November 28, 1989, the jury entered guilty verdicts on December 1, 1989, and the trial court imposed sentence on December 19, 1989. A motion for judgment of acquittal notwithstanding the verdict and for new trial filed on January 12, 1990, was denied on March 28, 1990. A notice of appeal to this court was filed on April 28, 1990, and the appeal was docketed in this court on May 17, 1990. Oral argument was heard by this court on September 4, 1990.

biting his infant daughter three times. After more than three bite marks were found on the victim's body, a search warrant was issued in Dougherty County in November 1988 authorizing the search of teeth in Harris's mouth. See *State v. Thornton*, 253 Ga. 524 (322 SE2d 711) (1984). Harris was taken to Fulton County so that impressions, x-rays and photographs of his teeth could be taken by a dentist there. The fruits of that search were suppressed in July 1989 on the grounds that the magistrate in Dougherty County lacked jurisdiction to issue a warrant to be executed in Fulton County and that the warrant lacked particularity. Two more warrants were issued in August 1989, one in Baker County where appellant was and one in Fulton County where the dentist was. A motion to suppress the dental impressions, x-rays and photographs produced in executing those warrants was denied in November 1989.

Appellant argues that the evidence was subject to suppression because it had previously been suppressed, and that the dentist's testimony should have been excluded on the ground that it was based on evidence which was suppressed. We disagree. The evidence produced in the second search was not the same evidence produced in the first search, there is no showing that the evidence produced in the second search was in any way dependent on the evidence produced in the first search, and the dentist testified that his testimony was based entirely on the results of the second search. We are aware of no authority, and appellant suggests none, which would prohibit a second search under a second warrant. Compare *Delaney v. State*, 135 Ga. App. 612 (218 SE2d 318) (1975). There was no error in denying appellant's motion to suppress or in refusing to exclude the dentist's testimony on this ground.

3. The search warrant issued in Baker County directed a named police officer to take appellant to Fulton County,

"to enlist the aid of . . . Thomas J. David, a qualified forensic dentist, and, with such aid, to search the person, and, more specifically, the mouth of Bobby Lee Harris, Jr., and to examine the teeth therein, and to obtain such dental impression, dental x-rays, and dental photographs as may be useful in the investigation and/or trial of the . . . crimes [of which appellant was accused]. . . .

The warrant issued in Fulton County incorporated the provisions of the Baker County warrant. Appellant contends that the dental impressions, x-rays and photographs produced in the search pursuant to those warrants should be suppressed because the warrants were actually executed by a dentist who was not a peace officer, thus violating the requirement in OCGA § 17-5-24 that warrants "shall be directed

for execution to all peace officers of this state." Several appellate decisions deal with the production of evidence through medical or dental procedures. See, e.g., *State v. Thornton*, 253 Ga. 524, supra (dental impressions made by the same dentist involved in the present case); *Strong v. State*, 231 Ga. 514 (202 SE2d 428) (1973) (blood drawn by medical technician at direction of peace officer); and *Creamer v. State*, 229 Ga. 511 (192 SE2d 350) (1972) (surgery to be performed by physician to remove bullet). Although those cases all dealt with the right against self-incrimination and did not expressly address the issue raised here by appellant, they are clear authority for the proposition that the State has the right to obtain evidence from a suspect by means of medical or dental procedures. That being so, it would be unreasonable to suggest that the actual physical gathering of the evidence, utilizing equipment and procedures requiring expert skill and having a high potential for harm to the person being searched, must be done by peace officers. We hold, therefore, that the trial court did not err in denying appellant's motion to suppress on the ground that the search warrant was not executed by a peace officer.

4. Appellant contended at trial and continues to argue on appeal that the dentist's testimony should have been excluded because of the State's failure to provide the defense, pursuant to timely request, with all written scientific reports. Defense counsel asserted that a letter containing the dentist's opinion that the bite marks on the victim matched appellant's teeth was not a sufficient compliance. The trial court, upon the State's assurance that the letter it had supplied defense counsel was the only report generated from the material produced in the second search, overruled appellant's objection. There is no evidence to suggest that there were any reports generated by the dentist with regard to the evidence taken in the second search other than that provided to the defense. Appellant's argument is that he was entitled to a copy of the report based on the evidence produced in the first search and that he was entitled to discovery of all the dental impressions, x-rays and photographs.

As to any report generated as a result of the first search, we have no hesitation in ruling that appellant was not entitled to the report. OCGA § 17-7-211 requires that the defense be supplied with copies of all written scientific reports which will be introduced against the defendant. The report generated as a result of the first search was not a report which was to be introduced against defendant because he had caused it to be suppressed. The dentist testified that his findings which were used at trial were based solely on the material gathered in the second search. Under those circumstances, there was no error in overruling appellant's objection to the dentist's testimony on the ground that the State had failed to supply the defense with a report

generated from the suppressed evidence.

Under this court's holding in *Williams v. State*, 251 Ga. 749 (3c) (312 SE2d 40) (1983), the dental impressions, x-rays and photographs appellant sought were not discoverable as written scientific reports inasmuch as they did not contain the dentist's conclusions and findings, but had to be interpreted by him to attain significance. The trial court did not err in overruling appellant's objection on that ground.

5. Numerous photographs of the victim in this case were introduced into evidence. Appellant objected to the admission of certain post-mortem photographs on the ground that they were cumulative of other photographs taken while the child was alive and were prejudicial because they made it appear that the child had been beaten. The overruling of that objection is enumerated as error.

Appellant's reliance on *Brown v. State*, 250 Ga. 862 (302 SE2d 347) (1983), as authority for exclusion of the photographs is misplaced. That case dealt with depictions of a victim after autopsy incisions are made or after the state of the body is changed by authorities or a pathologist. In the present case, there is no evidence that anything was done to the victim's body after death to produce the lividity of which appellant complains.

"Photographs which are material and relevant to any issue are admissible even though they may be duplicative and inflame the jury." *Goss v. State*, 255 Ga. 678 (1) (341 SE2d 448) (1986). The photographs to which appellant objected were used to demonstrate the aging of certain bruises and bite marks on the victim's body to show the injuries she sustained and to refute appellant's testimony concerning the timing and circumstances of the bites. We find no error in their admission.

6. The defense in this case put on a series of witnesses, including appellant and his wife and parents, to testify that he was a gentle, loving father who would never harm his daughter. Appellant testified specifically that he loved his daughter and that she was his life. On cross-examination, he testified that his relationship with his wife was good. Over appellant's objection, the trial court permitted the State to cross-examine appellant's wife concerning violence toward her by appellant while she was pregnant with the victim, and to present rebuttal witnesses to impeach appellant's wife's testimony that there was no such violence. One witness testified that appellant's wife had told the witness that appellant was angered by her pregnancy and beat her in the abdomen in an effort to cause an abortion. Others testified generally that appellant had been mean and violent toward his wife. Appellant urges on appeal that the rebuttal testimony impermissibly injected his character into the trial and requires a reversal.

When a defendant testifies, he is subject to cross-examination

and impeachment like any other witness. *Williams v. State*, 257 Ga. 761 (4) (363 SE2d 535) (1988). One means of impeaching a defendant's testimony is to present evidence disproving the facts to which the defendant testified, and such impeachment is permissible notwithstanding an adverse reflection on the defendant's character. Id. at 763. In the present case, the State questioned appellant's wife in an effort to impeach appellant's testimony regarding his attitude toward her and his child. When she denied making statements regarding those matters, the State properly brought in witnesses to impeach her testimony in the same way it sought to impeach appellant's testimony, by disproving the facts to which she testified.

> Evidence is not inadmissible "simply because it might incidentally reflect on the defendant's character." [Cit.] *Any* evidence establishing that a defendant has committed the crimes for which he is being tried . . . will inevitably say something about his character. What is forbidden is the introduction by the state in the first instance of evidence whose *sole* relevance to the crime charged is that it tends to show that the defendant has bad character. [Cit.] That is, unless and until the defendant elects to make it so, character *per se*, good or bad, is not an issue in the case. However, " 'there are numerous . . . purposes other than character for which evidence of other criminal acts may be offered, and when so offered, the rule of exclusion is simply inapplicable.' [Cits.]" [*Frazier v. State*, 257 Ga. 690, 698 (362 SE2d 351) (1987).]

We find no error in the admission of the rebuttal testimony of which appellant complains.

7. In his final enumeration of error, appellant complains of the presence in the courtroom of television cameras without proper compliance with Uniform Superior Court Rule 22. This court held in *Multimedia WMAZ, Inc. v. State*, 256 Ga. 698 (2) (353 SE2d 173) (1987), that the rule

> permits electronic-media coverage of trials in the superior courts unless the assigned judge, after "appropriate hearing" with notice, makes specific findings that such coverage is either not "within the requirements of due process of law" or cannot be "done without detracting from the dignity and decorum of the court."

In the present case, due to a miscommunication between court officials and media representatives, there was no notice to the parties that the electronic media wished to use cameras in the courtroom,

and no hearing was held until appellant complained immediately before the trial commenced about the presence of the cameras. It is clear, therefore, that appellant is correct that Rule 22 was violated in that he did not receive pretrial notice that the electronic media wished to televise his trial.

It is not clear, however, that appellant was in any way harmed by the failure to comply with the procedural requirements of the rule. Neither in the hearing convened before trial in response to appellant's complaint nor at any time since, in the trial court or on appeal, has appellant specified any way in which the presence of cameras deprived him of due process of law or detracted from the dignity and decorum of the court.

In *Multimedia*, supra, this court reaffirmed the discretion of the trial courts, in the specific context of electronic media presence in the courtroom, to regulate and control the business of the court. Under the circumstances of this case, in view of the "open courthouse door" policy also reaffirmed in *Multimedia*, and the inability of appellant to point to any harm or prejudice to him which accrued either from the lack of notice or as a result of the presence of television cameras, we hold that the trial court did not abuse its discretion in conducting a hearing immediately before trial and in permitting the trial to be televised.

*Judgment affirmed. Clarke, C. J., Bell, Hunt, Fletcher, JJ., and Judge Walker P. Johnson, Jr., concur; Smith, P. J., concurs in the judgment only; Weltner, J., not participating.*

DECIDED FEBRUARY 28, 1991.

*Perry, Walters & Lippitt, Nancy Greg Grigg, B. Samuel Engram, Jr.,* for appellant.

*Britt R. Priddy, District Attorney, Michael J. Bowers, Attorney General, Mary Beth Westmoreland, Senior Assistant Attorney General,* for appellee.