**FIFTH DIVISION
RICKMAN, C. J.,
MCFADDEN, P. J., and SENIOR APPELLATE JUDGE PHIPPS**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**July 21, 2021**

# In the Court of Appeals of Georgia

A21A0994. PERKINS v. THE STATE.

MCFADDEN, Presiding Judge.

After a jury trial, Jonathan Lamar Perkins was convicted of trafficking methamphetamine, possession of marijuana with intent to distribute, two counts of possession of a firearm during the commission of a felony, and two counts of possession of a firearm by a convicted felon. He appeals, arguing that the trial court erred in denying his motion to suppress, but we hold that he has not shown error. He also argues that trial counsel was ineffective, but he has not shown both deficient performance and prejudice. So we affirm.

1. *Motion to suppress*.

Perkins argues that the trial court erred in denying his motion to suppress because the state did not demonstrate that the detectives who stopped him had a

reasonable suspicion that he had been involved in criminal activity. We hold that the state met its burden. OCGA § 17-5-30 (b) ("the burden of proving that the search and seizure were lawful shall be on the state").

Because the trial court denied the motion to suppress in a summary order without explicit findings, "we presume that the trial court implicitly made all the findings in support of its ruling that the record would allow." *State v. Walden*, __ Ga. __ (858 SE2d 42) (2021). Additionally, we "construe the evidence most favorably to uphold the trial court's judgment." *State v. Brogan*, 340 Ga. App. 232, 234 (797 SE2d 149) (2017).

So viewed, the evidence shows that two detectives were driving in separate cars to Rossville to interview Perkins's nephew, who was suspected of having stolen a car. A woman had reported that she lent her car to the nephew and he had failed to return it. Although the detective who was investigating the stolen-car case did not remember the woman's name when he testified at the motion-to-suppress hearing, he had the name in a summary of the case that he had left at his office.

As they approached the residence where they believed the nephew lived, the detectives saw a man leaving the residence on a motorcycle. He was white, like the nephew, and he had the same build as the nephew.

One of the detectives stopped his car in front of the motorcycle to verify the identity of the motorcycle driver, believing the driver could be the nephew. The motorcycle stopped, the driver stepped off the motorcycle and he began reaching for his pocket. . Multiple times, the detective ordered the driver to remove his hand from his pocket, afraid that he had a weapon, but the motorcycle driver ignored the command and turned as if he intended to get back on the motorcycle. The detective grabbed the driver's hand to remove it from his pocket and the driver announced that he had a pistol in his pocket. The detective handcuffed the driver and retrieved the pistol from his pocket.

The detective removed the driver's helmet and realized that he had stopped Perkins, not the nephew. The detective believed that Perkins was a convicted felon, and Perkins immediately admitted that he was. Perkins also said that he had two more handguns in his backpack. The detectives searched the backpack to recover the handguns. In addition to the guns, they found methamphetamine, marijuana, and a large amount of cash in the backpack.

Perkins argues that the trial court erred in denying his motion to suppress because the detectives should not have stopped him. He argues that they lacked reasonable suspicion to stop the nephew in the first place, given that they only knew

that an unnamed owner of a vehicle had lent it to the nephew and that the nephew had not returned it, and because the alleged vehicle theft had occurred in the past and was not currently in progress. Perkins also argues that it was not objectively reasonable for the detectives to have mistaken him for his nephew, given that the detectives could not testify about the nephew's height or weight and given Perkins's mother's testimony that the two men had different builds. We disagree with Perkins's arguments.

(a) *Reasonable suspicion of a completed felony*.

Contrary to Perkins's argument, the detectives could stop the nephew for an alleged completed crime, as long as they had reasonable suspicion. "[I]f police have a reasonable suspicion, grounded in specific and articulable facts, that a person they encounter was involved in or is wanted in connection with a completed felony, then a *Terry* [*v. Ohio*, 392 U. S. 1 (88 SCt 1868, 20 LE2d 889) (1968)] stop may be made to investigate that suspicion." *United States v. Hensley*, 469 U. S. 221, 229 (II) (A) (105 SCt 675, 83 LE2d 604) (1985); accord *Kettman v. State*, 257 Ga. 603, 607 (9) (362 SE2d 342) (1987). The detectives had a reasonable suspicion, grounded in articulable facts, that the nephew had been involved in a completed felony. They had received a report from a possible victim, who identified herself to them, that she had

4

lent her car to the nephew and that he had failed to return it. This gave the detectives "a founded suspicion . . . from which the court [could] determine that the [stop] was not arbitrary or harassing." *Duke v. State*, 257 Ga. App. 609, 610 (571 SE2d 414) (2002).

 (b) *Mistaken identity*.

Perkins argues that the stop was illegal because the detectives' mistaking him for his nephew was not objectively reasonable. Again, we disagree.

The fact that the detectives were mistaken about the identity of the motorcycle driver does not invalidate the stop. "[S]earches and seizures based on mistakes of fact[, including mistaking another individual for a suspect,] can be reasonable." *Heien v. North Carolina*, 574 U. S. 54, 61 (II) (135 SCt 530, 190 LE2d 475) (2014). See also *Hill v. California*, 401 U. S. 797, 802 (II) (91 SCt 1106, 28 LE2d 484) (1971) ("[W]hen the police have probable cause to arrest one party, and when they reasonably mistake a second party for the first party, then the arrest of the second party is a valid arrest.") (citation and punctuation omitted); *Cunningham v. State*, 231 Ga. App. 420, 422 (1) (498 SE2d 590) (1998) (applying *Hill* to traffic stop). "The limit is that the mistakes must be those of reasonable men." *Heien*, 574 U. S. at 61 (II) (citation and punctuation omitted).

5

In this case, the state presented evidence that the detectives believed they were stopping the nephew instead of Perkins because both the nephew and Perkins are white, their builds are similar, and the motorcycle was leaving what they believed to be the nephew's residence. As for Perkins's mother's testimony that the men have different builds, of course the "[c]redibility of witnesses and the weight to be given their testimony is a decision-making power that lies solely with the trier of fact." *Tate v. State*, 264 Ga. 53, 56 (3) (440 SE2d 646) (1994); accord *Hughes v. State*, 296 Ga. 744, 747 (1) (770 SE2d 636) (2015).

We cannot say that the trial court erred in denying the motion to suppress.

2. *Ineffective assistance of counsel*.

Perkins argues that his trial counsel was ineffective in making his opening statement and in failing to move for a mistrial. To prevail on his claim of ineffective assistance of counsel, Perkins must "prove both that his counsel's performance was professionally deficient and that, but for the unprofessional performance, there is a reasonable probability that the outcome of the proceeding would have been different. We need not review both elements of this test if [Perkins] fails to prove one of them." *Stripling v. State*, 304 Ga. 131, 138 (3) (b) (816 SE2d 663) (2018) (citation omitted).

6

See *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984). Perkins has failed to prove both elements for his claims.

(a) *Opening statement*.

Before trial, the court conducted a *Jackson-Denno* hearing regarding the admissibility of three statements Perkins made to the detectives: that he had a gun in his pocket; that he was a convicted felon; and that he had two guns in his backpack. The parties agreed to bifurcate Perkins's trial so that the possession-by-a-convicted-felon charges would be tried separately from the drug charges and they stipulated that Perkins's statement that he was a convicted felon would not be admitted in the trial of the drug charges. The assistant district attorney agreed to instruct the state's witnesses not to mention that statement "unless [defense counsel] open[ed] the door to which they [could] respond as they need[ed]."

The trial began and in his opening statement, defense counsel stated that the detectives "arrested [Perkins] for the gun in his pocket. No crime was committed." After defense counsel completed his opening statement, the assistant district attorney requested a bench conference, where she argued that defense counsel's opening statement opened the door to the presentation of evidence that Perkins was a convicted felon in order to demonstrate that, contrary to defense counsel's opening

statement, Perkins was arrested for a crime, the crime of being a convicted felon in possession of a firearm.

In response, defense counsel argued that his opening statement was accurate because Perkins had not committed a crime when the detectives arrested him—by handcuffing him—which they did before Perkins had admitted that he was a convicted felon. The state countered that Perkins was handcuffed because he stated that he had a gun in his pocket and that he was not arrested until after he had admitted that he was a convicted felon.

The court agreed with the state that defense counsel had opened the door to the admission of evidence that Perkins was a convicted felon. So one of the detectives testified at trial that once the motorcyclist's helmet came off, he recognized him as Perkins, whom he knew to be a convicted felon.

At the motion-for-new-trial hearing, trial counsel testified that he had crafted his opening statement to ensure that he would not open the door to the admission of evidence that Perkins was a convicted felon. He explained that from his point of view, and in spite of the denial of the motion to suppress, the case was based on an unconstitutional, pretextual stop. He testified that he wanted to so inform the jury, "but [he] had to do so in such a way that it was appropriate to present to the jury. [He]

8

felt like [he] did that." In spite of the trial court's ruling otherwise, counsel testified that he still did not believe that he stated anything that opened the door.

Counsel's testimony demonstrates that he deliberately chose to strategically include the statement at issue in his opening statement. He wanted to inform the jury that, at least in his opinion, the stop was illegal, and he carefully crafted his statement so as not to open the door. The fact that his strategy was unsuccessful does not mean that his performance was deficient.

> A deliberate choice of trial strategy and tactics is the province of trial counsel after consultation with the client, and in order to show deficient performance of trial counsel in regard to trial strategy, an appellant must demonstrate that counsel's decision was so patently unreasonable that no competent attorney would have made it under the circumstances at the time. This [Perkins] has failed to do.

*Clark v. State*, 300 Ga. 899, 903 (2) (b) (799 SE2d 200) (2017) (citation omitted).

Given the evidence the detectives obtained from the stop of Perkins, the case hinged on the legality of the stop and search. So trial counsel proceeded with a strategy to call into question the stop and search—while attempting not to open the door to the admission of evidence that Perkins was a convicted felon. "That this strategy was ultimately unsuccessful . . . does not show that trial counsel's actions

were objectively unreasonable." *Farris v. State*, 293 Ga. App. 674, 678 (3) (667 SE2d 676) (2008). See also *Wallace v. State*, 296 Ga. 388, 392 (4) (c) (768 SE2d 480) (2015) ("The fact that [defendant] now disagrees with his lawyer's tactical choices during opening statement does not require a finding of ineffective assistance of counsel."); *Goodman v. State*, 293 Ga. 80, 87-88 (9) (e) (742 SE2d 719) (2013) (counsel's cross-examination of detective was not an unreasonable tactic or strategy even though it "opened the door" to damaging testimony); *Suits v. State*, 150 Ga. App. 285, 285-287 (1) (257 SE2d 306) (1979) (defense counsel's decision to concede prior criminal behavior in opening statement was a strategic decision that did not amount to ineffective assistance of counsel, even though state ended up not introducing evidence of the prior crimes), disapproved in part on other grounds in *State v. Lane*, 308 Ga. 10, 17 (1), 25 (appendix) (838 SE2d 808) (2020).

(b) *Failure to move for a mistrial*.

During direct examination, one of the detectives testified that Perkins said that there were two firearms in his backpack, in spite of the trial court's ruling at the *Jackson-Denno* hearing prohibiting testimony about that statement. Trial counsel objected and the court sustained the objection. The detective then immediately

testified that he and the other detective searched the backpack and found two other firearms.

Perkins now argues that trial counsel should have moved for a mistrial when the detective testified about Perkins's statement. At the motion for new trial hearing, trial counsel testified that he did not believe at the time that the violation of the trial court's ruling rose to the level of meriting a mistrial, although in hindsight, moving for a mistrial would have been a better choice than objecting.

Of course, "hindsight has no place in an assessment of the performance of trial counsel[.]" *Jones v. State*, 292 Ga. 593, 600 (7) (d) (740 SE2d 147) (2013). And evidence that Perkins had two firearms in his backpack was coming in: the trial court had not prohibited the detectives from testifying that in conducting the search of Perkins's backpack, they found two firearms. So the detective's testimony about Perkins's statement that he had two firearms in his backpack was merely cumulative of forthcoming evidence. Under these circumstances, "we cannot say that no competent attorney would have made the tactical decision" of objecting to the detective's statement instead of moving for a mistrial. *Brown v. State*, 297 Ga. 685, 690 (3) (b) (777 SE2d 466) (2015). See *Koonce v. State*, 305 Ga. 671, 676 (2) (d)

11

(827 SE2d 633) (2019) (no deficient performance for failure to make objection or mistrial motion where testimony was cumulative of other evidence presented at trial).

3. *Combined effect of trial counsel's alleged errors*.

Perkins argues that trial counsel's errors, when considered together, likely affected the outcome of the trial. "Although the combined effects of trial counsel's errors should be considered together as one issue," *Schofield v. Holsey*, 281 Ga. 809, 811 n.1 (II) (642 SE2d 56) (2007), "we have determined that trial counsel's conduct was not constitutionally deficient with respect to either error alleged. . . . This enumeration of error is therefore without merit." *Horton v. State*, 310 Ga. 310, 330 (5) (c) (849 SE2d 382) (2020).

*Judgment affirmed. Rickman, P. J., and Senior Appellate Judge Herbert E. Phipps concur.*