### 43401. CATCHINGS v. THE STATE.
(347 SE2d 572)

MARSHALL, Chief Justice.

Appellant, Don Michael Catchings, was convicted of the murder of Belinda Wood and arson in the first degree in connection with the burning of the Tahoe Vinings Apartments in Cobb County. The state sought the death penalty on grounds that: (1) The offense of murder was committed while the offender was engaged in the commission of a burglary, OCGA § 17-10-30 (b) (2); and (2) the offense of murder was outrageously or wantonly vile, horrible, or inhuman in that it involved depravity of mind. OCGA § 17-10-30 (b) (7). The jury found the appellant guilty of arson in the first degree and of felony murder, but the jury did not recommend that the death penalty be imposed. Appellant was given a sentence of life imprisonment for the murder conviction and a consecutive sentence of 20 years' imprisonment for the arson conviction.[1]

Appellant lived in a ground-floor apartment, and the victim lived in a third-floor apartment, at the Tahoe Vinings Apartments. At approximately 4:00 a.m. on March 14, 1985, neighbors heard loud screams emanating from the victim's apartment. There was testimony that footsteps were then heard descending from the victim's apartment to the lower level of the apartment building; however, no car was heard or observed exiting the parking lot. Some of the neighbors were so alarmed by the screams that they placed a telephone call to the police. The evidence showed that the victim had been stabbed in the back with a six-inch blade with such force that the blade pierced

---

[1] The crime was committed on March 14, 1985. The jury returned its verdict in the guilt/innocence phase on October 10, 1985. The jury returned its verdict in the sentencing phase the following day, on October 11. A motion for new trial was filed on November 11, 1985. The motion for new trial was denied on February 14, 1986. The notice of appeal was filed on March 10, 1986. The transcript of the evidence was filed on January 20, 1986. The case was docketed on April 17, 1986, and it was submitted for decision without oral argument on May 30, 1986.

her lung and broke one of her ribs. She was also stabbed in her lower left lung, which stabbing left a gaping four-inch gash. However, she retained consciousness sufficient to place a telephone call to the police. When a police officer eventually arrived at the apartment, he found the victim lying in a pool of blood. There were bloodstains throughout the apartment, and a knife was found near the victim's bed.

Appellant emerged from his apartment, stated that he was a respiratory therapist, and offered his assistance. As the investigation proceeded, he was noticed observing the events taking place. Specifically, he was seen underneath the balcony of the victim's apartment as the investigators were discussing toe prints on the track of the victim's sliding glass door, the knife found near the victim's bed, the bloodstains in the apartment, and a bloody handprint found on the victim's front door. Within five minutes after this conversation took place, smoke was detected arising from beneath the victim's apartment. The flames spread so rapidly that the murder investigation had to be discontinued, and an evacuation of the apartment building was begun.

The arson investigation established that the fire had been set intentionally, and the point of origin of the fire was found to be situated at various locations in appellant's apartment.

Subsequently, appellant was taken to the police station for questioning as a suspect in the arson and murder. During questioning, he informed the police that he did not "think [he] killed nobody," but that "[i]f you have prints of mine in her apartment, that would help me remember." Cuts and abrasions were also found on appellant's body, which were consistent with injuries he could have incurred in the course of the struggle with the victim and the breaking into her apartment. Additional testimony was presented that appellant was extremely agile and that on a previous occasion he had climbed from one floor of the apartment building to an upper-level floor.

Subsequent facts will be reviewed insofar as is necessary for a more thorough illumination of the issues presented in this appeal.

1. In the first enumeration of error, appellant argues that his challenge to the array of the grand and traverse juries was improperly overruled by the trial court.

Appellant's basic argument in this regard is that, utilizing a comparative-disparity analysis, there is an unconstitutional under-representation of blacks and young people on the Cobb County grand and traverse jury lists. Appellant also argues that use of the voter registration list as the source for compilation of the grand and traverse jury lists results in those lists not being representative of a fair cross-section of the community.

In connection with the present enumeration of error, appellant in

his brief has included no citations to the record. In any event, from our review of the record, we find that the evidence presented, and the jury lists challenged, are essentially the same as those in *Ingram v. State*, 253 Ga. 622 (1d) (323 SE2d 801) (1984) and *Cook v. State*, 255 Ga. 565 (11) (340 SE2d 843) (1986). Under the holdings in these cases, the trial court did not err in overruling appellant's jury challenges here.

2. In the second enumeration of error, appellant argues that Georgia's statutory death-penalty provisions are unconstitutional in that they allow the death penalty to be imposed in an arbitrary and capricious manner. Appellant also argues that imposition of the death penalty by electrocution constitutes cruel and unusual punishment.

Since appellant did not receive the death penalty, he lacks standing to launch these attacks. See *State v. Raybon*, 242 Ga. 858 (252 SE2d 417) (1979) and cits. Moreover, Georgia's death-penalty statutory scheme has withstood constitutional scrutiny as against the arguments advanced by appellant. *Felker v. State*, 252 Ga. 351 (14) (314 SE2d 621) (1984).

3. In the third enumeration of error, appellant argues that the "death qualification" of jurors under *Witherspoon v. Illinois*, 391 U. S. 510 (88 SC 1770, 20 LE2d 776) (1968) at the guilt/innocence phase of a death-penalty trial results in a violation of the defendant's right to an impartial jury and to a jury drawn from a representative cross-section of the community.

This argument has been held to be without merit in the recent decision of the United States Supreme Court in *Lockhart v. McCree*, ___ U. S. ___ (106 SC 1758, ___ LE2d ___) (1986).

4. In the fourth enumeration of error, appellant argues that the trial court erred in denying his motion to sever the murder charge from the arson charge.

"To avoid multiplicity of prosecutions, a prosecutor is required by law to prosecute in a single prosecution all known crimes arising from the same conduct within the jurisdiction of a single court, subject to the right to severance by the court in the interest of justice." *Jarrell v. State*, 234 Ga. 410, 412 (1) (216 SE2d 258) (1975), citing Code Ann. § 26-506 (OCGA § 16-1-7). Under the "interest of justice" criterion, the trial judge is vested with discretion in deciding whether to grant a severance. *Jarrell v. State*, supra. Where, as here, the evidence of one crime would be admissible in the trial of the other crime, it cannot be said that the trial court abused its discretion in denying the motion for severance. Id.

5. In the fifth enumeration of error, appellant argues, for a compendium of reasons, that the trial court erred in denying his motion to dismiss the indictment.

For reasons which follow, we find these arguments to be without

merit. See generally Daniel, Ga. Crim. Trial Prac. (1984 ed.), § 13-1 et seq.

(a) First, appellant argues that the indictment failed to sufficiently state the time and place of the commission of the alleged offenses.

We disagree.

Count 1 of the indictment alleged that the murder occurred on March 14, 1985, in Cobb County. Count 2 alleged that the arson took place at "2606 Paces Place, the property of Balcor Equity Properties XIV, Inc., d/b/a Tahoe Vinings Apartments and the dwelling house of the tenants therein, to wit [named individuals]."

(b) Second, appellant argues that no overt acts were alleged.

Again, we disagree.

Count 1 of the indictment alleged that the accused did unlawfully and with malice aforethought cause the death of the victim by stabbing her with a knife. Count 2 alleged that the accused did "by means of a fire, knowingly damage [the] building . . ."

(c) Appellant also argues that the indictment was vague and ambiguous, that it did not sufficiently apprise him of the charges against him so as to permit adequate preparation of a defense, that under the wording of the indictment a subsequent prosecution for the named offenses would not have been barred, and that the indictment did not state facts "sufficient to constitute a claim [sic] under the laws of the State of Georgia." For the reasons previously given, these arguments are without merit.

(d) Finally, appellant contends that the indictment was defective, because it failed to show on its face when it was returned.

The record belies this assertion. Here, the indictment shows on its face that it was entered on the minutes of the Cobb Superior Court on May 2, 1985.

6. In the sixth enumeration of error, appellant argues that the trial court erred in charging the jury on the principle of felony murder as a basis for imposition of a murder conviction. Appellant's argument in this regard is that the charge on felony murder was not supported by the evidence in this case. We disagree.

Here, the indictment charged, and the evidence showed, that appellant killed the victim by stabbing her with a knife. Thus, the trial court was authorized in charging the jury on the principle of felony murder — the felony being aggravated assault. See OCGA § 16-5-21; *Fair v. State*, 172 Ga. App. 49 (3) (321 SE2d 790) (1984).

Invoking what is commonly referred to as the merger problem, appellant also maintains that the felony-murder doctrine should not apply where, as here, the underlying felony is an aggravated assault which is not separate and distinct from the killing itself. This argument previously has been rejected in *Baker v. State*, 236 Ga. 754 (1)

(225 SE2d 269) (1976), for the reasons given in that decision.

As held in *Jolley v. State*, 254 Ga. 624, 627 (2) (331 SE2d 516) (1985), the "better method" is to allege in the murder indictment the specific felony to be used in a felony-murder charge. However, where, as here, the malice-murder indictment alleges that the defendant stabbed the victim with a knife (or where, as in *Jolley*, the murder indictment alleged that the defendant shot the victim with a pistol), this is sufficient to put the defendant on notice that he committed an aggravated assault on the victim. *Jolley v. State*, supra.

7. In the seventh enumeration of error, appellant complains of the introduction in evidence of a tape recording in which the victim had called a telephone operator after the attack upon her, and the operator had in turn called the police. Appellant argues that this tape recording lacked probative value, i.e., relevance, and that the only purpose of introducing it was to inflame the jury's emotions by allowing the jurors to listen to "the moans of the victim as she took her last breaths."

After being stabbed by appellant, the victim managed to drag herself to a kitchen telephone and contact a telephone operator for assistance. The operator, who remained on the line, transferred the call to the Cobb County Police Department. The police radio dispatcher received the call. The telephone operator and the dispatcher then sought to determine the address of the victim. The victim's address was determined, the police were dispatched, and the conversation concluded when a Cobb County police officer picked up the telephone at the victim's apartment. During the course of the conversation, the audible moans of the victim could be heard. The entire conversation was tape recorded pursuant to routine police procedures. The mechanical device which recorded the tape also denoted the time as the machine recorded. It was this tape recording, which was admitted in evidence at trial.

"[E]vidence is relevant if it renders the desired inference more probable than it would be without the evidence." *Baker v. State*, 246 Ga. 317, 319 (271 SE2d 360) (1980). Although we have limited the admissibility of autopsy photographs taken after the state of the body has been changed by authorities or the pathologist, *Brown v. State*, 250 Ga. 862 (5) (302 SE2d 347) (1983), other photographic evidence of the crime which is relevant and material to the issues in the case is, of course, not excludable on the ground that it is inflammatory. *Oglesby v. State*, 243 Ga. 690 (6) (256 SE2d 371) (1979) and cits. In this case, we are presented with aural, as opposed to photographic, evidence of the crime, but the general rule as to photographic evidence is applicable.

Here, as argued by the state, the tape recording was relevant to illustrate the time span between discovery of the crime and police ar-

rival on the scene. This fact was material, because it bore on the issue of whether or not the perpetrator had an opportunity to leave the scene. Several witnesses testified that no one was heard or seen leaving the apartment building between the time of the victim's screams and the police arrival. Thus, the questioned evidence rendered it more probable that appellant, who lived in the same apartment building as the victim, committed the murder.

However, it should be noted that the trial judge does retain discretion to exclude even probative evidence if its prejudicial effect substantially outweighs its probative value. *Brooks v. State*, 244 Ga. 574, 582 (3) (261 SE2d 379) (1979) and cits. We find no abuse of discretion on the part of the trial court in admitting the evidence here.

8. In the eighth enumeration of error, appellant argues that the trial court erred in admitting two autopsy photographs of the deceased.

As argued by the state, these photographs were pre-autopsy photographs showing the nature and extent of the physical injuries and were, thus, admissible. *Hill v. State*, 254 Ga. 213 (2) (326 SE2d 757) (1985).

9. In the ninth enumeration of error, appellant argues that the trial court erred in refusing to allow defense counsel to examine notes used by a witness in refreshing his recollection.

As argued by appellant, we have held in *Baxter v. State*, 254 Ga. 538, 548 (18) (331 SE2d 561) (1985), that "a defendant in a criminal case has the right, upon request, to examine a document used by a witness to refresh his recollection. See *Hardin v. State*, 252 Ga. 99 (311 SE2d 462) (1984); see also *Williams v. State*, 250 Ga. 664 (300 SE2d 685) (1983), Weltner, J., concurring specially, and Hill, C. J., dissenting." As of yet, we have not been called upon to decide whether this decision should be applied retroactively. In any event, we find it inapplicable here for several reasons.

From our review of the transcript, it appears to us that during cross-examination of this witness, defense counsel did ask to see a copy of an investigative report which the witness, who is an arson investigator with the Cobb County Fire Department, had filed with the Cobb County District Attorney's office. This request was denied. Later in the cross-examination of the witness, the witness referred to notes that he had reviewed subsequent to a pretrial hearing in this case. At trial, the witness testified that although he had testified at the pretrial hearing that he had found a certain book entitled "Xaviera's Supersex" in the back seat of appellant's automobile, he had since reviewed the notes he had made and from reviewing these notes he remembered that he had actually found this book in the front seat of the car.

This discrepancy in the witness' testimony was in no way mate-

rial. More importantly, we do not find, from our review of the transcript, that defense counsel requested to see the notes alluded to by the witness. And, it does not appear that the witness was using these notes during the trial to refresh his recollection. Consequently, *Baxter* is inapposite.

We find this enumeration of error to be without merit.

10. In the tenth enumeration of error, appellant complains of the admission in evidence of certain items seized from his automobile.

Two days after the fire, a patrolman at the scene of the fire was peering through the windshield of appellant's automobile, and he noticed ashes on the front floorboard. At the time, the automobile was located in an area of the apartment complex parking lot which had been cordoned off as part of the crime scene. A lieutenant with the Cobb County Fire Department met a detective with the Cobb County Police Department at the scene. The lieutenant opined that the ashes in the car, which was locked, could not have been physically transported from the burned apartment building. The police detective had the door opened, and he photographed the ashes. He photographed the ashes before moving the car, because he had been informed "that they [the ashes] were real fragile, and any movement would make them break apart." The car was then locked and impounded at police headquarters. After obtaining a search warrant, the police searched the car.

At trial, appellant sought to suppress state's Exhibits 114, 115, 116, 117, and 118, which consisted of a lady's compact and papers taken from the front floorboard of appellant's car, the burned paper and ashes also taken from the front floorboard, and the book entitled "Xaviera's Supersex."

Appellant contends that the seizure of these items was accomplished through the police officer's opening the car door and photographing these items; that these items had no direct connection with the arson in the apartment complex, thereby rendering the plain-view doctrine inapplicable; and that the exigent-circumstance exception to the warrant requirement does not exist in this case, because the automobile was being guarded within the crime-scene area and had sat there for two days prior to its search.

(a) We hold that the police officer's viewing of the ashes in appellant's car through the windshield did not constitute a search. " 'There is no legitimate expectation of privacy (cits.) shielding that portion of the interior of an automobile which may be viewed from outside the vehicle by either inquisitive passersby or diligent police officers. In short, the conduct that enabled (the officers) to observe the interior of (the vehicles) was not a search within the meaning of the Fourth Amendment.' *Texas v. Brown* [460 U. S. 730] (103 SC 1535, 1542, 75 LE2d 502) (1983)." *Shaw v. State*, 253 Ga. 382 (320 SE2d 371) (1984).

(b) We also hold that to the extent that the opening of the door and photographing of the ashes constituted a warrantless search and/ or seizure, this was justified by the exigencies of the case. "Automobiles, because of their mobility, may be searched without a warrant upon facts not justifying a warrantless search of a residence or office. *Brinegar v. United States*, 338 U. S. 160 [69 SC 1302, 93 LE 1879] (1949); *Carroll v. United States*, 267 U. S. 132 [45 SC 280, 69 LE 543] (1925). The cases so holding have, however, always insisted that the officers conducting the search have 'reasonable or probable cause' to believe that they will find the instrumentality of a crime or evidence pertaining to a crime before they begin their warrantless search." *Dyke v. Taylor Implement Mfg. Co.*, 391 U. S. 216, 221 (88 SC 1472, 20 LE2d 538) (1968). Under the facts here, it cannot be said that the officer photographing the ashes in the appellant's car did not have reasonable cause to believe that he would find evidence pertaining to the arson.

(c) The remaining aspects of the search and seizure took place after the car had been impounded and a search warrant obtained.

11. In the eleventh enumeration of error, appellant argues that in instructing the jury, prior to the introduction of evidence in the guilt/ innocence phase, that "you may infer that the acts of a person of sound mind and discretion are the products of his will, but the inference may be rebutted," the trial court gave an unconstitutionally burden-shifting charge under *Francis v. Franklin*, 471 U. S. ___ (105 SC 1965, 85 LE2d 344) (1985).

However, the majority in *Francis v. Franklin*, 471 U. S., supra at p. 141, citing *Cupp v. Naughten*, 414 U. S. 141 (94 SC 396, 38 LE2d 368) (1973), recognized that a jury charge must be taken as a whole and not adjudged in isolation. Here, the trial court also instructed the jury that "whether or not you make any inference of any kind is a matter solely within your discretion as a trial jury in this case." Cf. *Williams v. Kemp*, 255 Ga. 380 (338 SE2d 669) (1986).

Such a charge, viewed as a whole, is not unconstitutionally burden-shifting under *Francis v. Franklin*, supra. *Scott v. State*, 255 Ga. 701 (3) (342 SE2d 310) (1986); *Lingerfelt v. State*, 255 Ga. 180 (4) (336 SE2d 250) (1985).

12. In the twelfth enumeration of error, appellant argues that the trial court erred in allowing an investigating police officer to impeach appellant by testifying to his general bad character in the community.

OCGA § 24-9-84 establishes the procedure for impeaching a witness by evidence as to his general bad character, and a defendant in a criminal case is subject to this mode of impeachment when he has placed his character in issue. *Simpson v. State*, 78 Ga. 91 (2c) (1886). "The impeaching witness should first be questioned as to his knowledge of the general character of the witness, next as to what that

character is, and lastly he may be asked if from that character he would believe him on his oath." OCGA § 24-9-84, supra. Under this mode of impeachment, the question is the general character in the community of the witness who is being impeached and not the impeaching witness' personal opinion as to that character. *Gravitt v. State*, 220 Ga. 781 (8) (141 SE2d 893) (1965); *Lynn v. State*, 140 Ga. 387 (10) (79 SE 29) (1913).

Here, appellant acknowledges that he did place his character in issue, thereby opening the door to the foregoing mode of impeachment. However, appellant complains that the investigating police officer who was the impeaching witness was not a member of the community in which appellant works and lives. Appellant further argues that an investigating police officer should not be allowed to testify as an impeaching witness because of an inherent bias on the officer's part against the defendant.

From our review of the transcript, it appears that the foundation for the instant impeachment evidence was laid by the impeaching witness' testifying that he possessed personal knowledge as to appellant's character and reputation in the community, and he further testified that his character and reputation were bad. Cf. *United States v. Perry*, 643 F2d 38 (29) (2nd Cir. 1981).

The fact that the investigating police officer was not a member of the defendant's community is certainly a basis for impeaching his credibility, but so long as the witness could testify that he possessed personal knowledge of the defendant's character and reputation in the community, he was not incompetent to testify. Accord *Cargill v. State*, 255 Ga. 616 (33) (340 SE2d 891) (1986); *Michelson v. United States*, 335 U. S. 469 (69 SC 213, 93 LE 168) (1948); *United States v. Perry*, supra. But see *Louisiana v. Frentz*, 354 S2d 1007 (10) (La. 1978); *Wright v. Texas*, 609 SW2d 801 (Tex. Ct. App. 1981). Any bias, inherent or otherwise, which the police officer bears against the defendant is itself a proper ground for impeaching the officer's testimony. See Agnor's Ga. Evid., § 5-6 (1976).

13. In the thirteenth enumeration of error, appellant complains of the trial court's jury instruction, prior to the introduction of evidence at the guilt/innocence phase, with respect to the role of the grand jury.

In this regard, the trial court instructed the jury, "Grand jurors do not try criminal cases. Their investigation is ex parte, that is, they ordinarily only hear from witnesses for the State. If after hearing from them they are convinced there is sufficient evidence that a crime has been committed to warrant a trial before a trial jury, it is the duty of the Grand Jury to indict or present the accused party in order that that person may be brought to trial so that under admissible, competent evidence in open court the guilt or innocence of the ac-

cused will be determined." Appellant argues that this jury instruction denigrated the presumption of innocence by informing the petit jury that the grand jury had already determined that there was sufficient evidence to warrant a trial.

In this charge, the trial court was merely instructing the jury concerning the nature and function of the grand jury and of an indictment. In this charge, the judge specifically instructed the jury that "every person is presumed innocent until proved guilty."

We find this enumeration of error to be without merit.

14. In the fourteenth enumeration of error, appellant argues that the trial court erred in instructing the jury at the sentencing phase that its verdict had to be unanimous, since the failure of the jury in a death-penalty case to reach a unanimous verdict regarding imposition of the death penalty results in the imposition of a sentence of life imprisonment. *Hill v. State*, 250 Ga. 821 (301 SE2d 269) (1983) and cit.

This complained-of charge was a correct statement of the law. *Ingram v. State*, 253 Ga. 622 (15) (323 SE2d 801) (1984) and cit. And, the appellant lacks standing to complain, since he was not given the death penalty. "[H]arm, as well as error, must be shown for reversal . . ." *Wood v. State*, 243 Ga. 273, 274 (253 SE2d 751) (1979).

15. In the final enumeration of error, appellant argues that, because of an insufficiency of the evidence, the trial court erred in charging the jury on the two statutory aggravating circumstances advanced by the state in support of imposition of the death penalty.

As previously stated, the jury did not return a verdict recommending imposition of the death penalty. Consequently, this enumeration of error is without merit. *Wood v. State*, supra.

*Judgment affirmed. All the Justices concur, except Gregory, J., who concurs in the judgment only.*

DECIDED SEPTEMBER 3, 1986.

*Jimmy D. Berry*, for appellant.
*Thomas J. Charron, District Attorney, Nancy I. Jordan, Assistant District Attorney, Michael J. Bowers, Attorney General, Eddie Snelling, Jr., Assistant Attorney General*, for appellee.