## 76630. MILLER v. THE STATE.
(376 SE2d 901)

CARLEY, Judge.

Appellant was tried before a jury and convicted of child molestation and aggravated sodomy. Appellant appeals from the judgments of conviction and sentences entered by the trial court on the jury's verdicts.

1. The trial court allowed appellant to examine the notes which a witness for the State had used to refresh his recollection while he was on the stand. The trial court refused, however, to allow appellant to examine any other notes which the witness may have reviewed prior to his being called to the stand. This ruling is enumerated as error.

In *Baxter v. State,* 254 Ga. 538, 548 (18) (331 SE2d 561) (1985), our Supreme Court held "that a defendant in a criminal case has the right, upon request, to examine a document used by a witness to refresh his recollection. [Cits.]" Appellant urges that this right extends to any and all materials which were reviewed by a witness in preparation for his testimony at the trial and is not limited to only those materials which were reviewed by a witness to refresh his recollection while actually on the stand. There is explicit authority for the proposition advanced by appellant. In *Caviness v. State,* 180 Ga. App. 792, 793 (3) (350 SE2d 813) (1986), this court held that "because we can discern no logical basis for distinguishing between notes used by a witness to refresh his or her recollection while actually on the witness stand and notes reviewed for that purpose immediately *prior to trial,* we hold that the trial court erred in refusing to allow the appellant's counsel to examine the report in question in the present case." (Emphasis supplied.) There is, however, also implicit authority for the contrary proposition. Our Supreme Court has indicated that where it "does not appear that the witness was using these notes *during the trial* to refresh his recollection. . . . *Baxter* is inapposite." (Emphasis supplied.) *Catchings v. State,* 256 Ga. 241, 247 (9) (347 SE2d 572) (1986). Accordingly, resolution of the merits of appellant's enumera-

tion of error requires that we undertake a reconsideration of our explicit holding in *Caviness* in light of the implicit holding of the Supreme Court in *Catchings*.

As previously noted, the reason given in *Caviness* for its broad holding was an inability to discern a logical basis for distinguishing between the right to an examination of notes used to refresh the recollection of a witness for the State immediately prior to trial and the right to an examination of notes which were used for that purpose during the trial itself. Upon reconsideration, however, we find that a logical basis for making such a distinction does exist. The obvious rationale which underlies the holding in *Baxter v. State*, supra at 548 (18), is that the defendant in a criminal case is to be afforded the right to a thorough and sifting cross-examination concerning the credibility of the assertion by a witness for the State that certain materials had served the purpose of refreshing his recollection. See *Williams v. State*, 250 Ga. 664, 667 (300 SE2d 685) (1983) (Special concurrence of Weltner, J., and dissent of Hill, C. J., which were cited with approval in *Baxter v. State*, supra at 548 (18)). This right is preserved by affording the defendant in a criminal case the limited opportunity to examine only those specific materials upon which the witness for the State has based his assertion of a refreshed recollection. To extend that right to encompass any and all other materials which a witness for the State may have reviewed at some indefinite point in time prior to his actually being called to testify would not result in an extension of the right to a thorough and sifting cross-examination as to a relevant topic. The only relevant inquiry is the credibility of the witness' assertion of a refreshed recollection as the basis for his testimony at trial, not the credibility of the witness' trial testimony for which no such assertion of a refreshed recollection is advanced.

An extension of the right to encompass such materials as the witness may have reviewed out-of-court would result in an unwarranted and potentially unworkable extension of the permissible scope of discovery in criminal cases beyond its presently limited statutory bounds. Any and all materials which had been reviewed by a State's witness in preparation for trial would be "discoverable" at trial by the defendant, notwithstanding the absence of any statutory authorization for such discovery. Every cross-examination of a witness for the State would become a potential "fishing" expedition, wherein the defendant could seek access to any and all materials which the witness may have seen prior to and in preparation for trial. Trial courts would be required to interrupt criminal trials to conduct a series of hearings to determine exactly what materials each witness for the State may or may not have reviewed in advance of the trial. It is undoubtedly for these reasons that the majority of jurisdictions allow only a limited rather than a broad right of access to materials which are available

for a witness' review. "Although there is some authority to the contrary, it is generally held that opposing counsel is not entitled to examine a writing which the witness used to refresh his recollection prior to his examination, where he was able to testify from independent recollection after so refreshing his memory." 98 CJS, Witnesses, § 362, p. 101. See also 81 AmJur2d, Witnesses, § 460, p. 469; Cleary, McCormick's Handbook of the Law of Evidence, § 9 (3d ed. 1984); Torcia, Wharton's Criminal Evidence, § 388 (14th ed. 1986).

Accordingly, we construe the decision in *Catchings* as an implicit recognition by our Supreme Court that Georgia is among those states which follow the majority rule: The defendant in a criminal case is entitled to examine all materials which are used by a witness for the State to testify from recollection refreshed during the trial itself, but he is not entitled to examine any and all such documents as may have been reviewed by the witness prior to trial, without regard to whether the out-of-court review was conducted "immediately" prior to trial or at some earlier time. To the extent that *Caviness v. State*, supra, is in conflict with *Catchings v. State*, supra, as thus interpreted, it is hereby overruled. It necessarily follows that the trial court did not err in not allowing appellant access to notes reviewed by the witness before he began his testimony.

2. The State called Dr. Michael Campion, a clinical psychologist, as an expert witness. During Dr. Campion's direct examination, the State asked if he had "develop[ed] an opinion as to whether or not [the child] had been molested by [appellant]?" Appellant immediately objected on the ground that the question sought to elicit such opinion testimony from Dr. Campion as would oust "the jury of the ultimate determination of the facts of this case." The jury was removed from the courtroom and an extensive colloquy between counsel and the trial court ensued. The trial court eventually concluded that it would allow the State to ask Dr. Campion two rephrased questions: Whether he was of the opinion that the child had been "sexually involved"; and, if it was his opinion that she had been, whether he had a further opinion regarding appellant's connection therewith. In response to the trial court's ruling, appellant stated that he "would object to the second question." The jury returned and Dr. Campion was asked the first of the two questions which the trial court had allowed: "Do you have an opinion as to whether or not [the child] has been sexually involved in any way?" When he responded that he had, he was then asked to give his opinion in that regard. Dr. Campion not only responded to that question, but he also anticipated the State's next inquiry. He testified: "I believe there was a sexual involvement between [the child and appellant] on more than one (1) occasion from a period of her first grade up until and including the fourth grade." At that point, appellant stated "[f]or the record [that he was] re-

new[ing] [his] motion—renew[ing] [his] objection." On appeal, appellant enumerates the admission of Dr. Campion's opinion testimony as error.

We need not decide whether it would have been error for the trial court to confine the State's inquiry merely to Dr. Campion's opinion concerning the child's "sexual involvement." See *State v. Butler*, 256 Ga. 448 (349 SE2d 684) (1986) (holding that it was not error to allow an expert to give her opinion that the child had been molested); *Allison v. State*, 256 Ga. 851 (353 SE2d 805) (1987) (holding that it was error to allow an expert to give his opinion that the child had been molested). By allowing the State to propound and Dr. Campion to respond to both inquiries, the trial court erroneously allowed the State to elicit what was, in effect, Dr. Campion's opinion that appellant was guilty of child molestation. If the child had been "sexually involved" with appellant, then appellant was guilty of sexually molesting the less than fourteen-year-old child. It has long been the law of this state that such opinion testimony is inadmissible. See *Allen v. State*, 9 Ga. 492 (1) (1851); *Woolfolk v. State*, 81 Ga. 551, 556 (2) (8 SE 724) (1889); *Tiller v. State*, 96 Ga. 430, 433 (3) (23 SE 825) (1895). Dr. Campion's testimony "was clearly inadmissible. It amounted to nothing more than the opinion of the witness as to the [appellant's] guilt. It was just as inadmissible as it would have been if he had been asked his opinion as to whether the [appellant] was guilty or not." *Woolfolk v. State*, supra at 556 (2). The guilt or innocence of appellant was clearly the ultimate issue in the case and, as a matter of law, that issue was certainly not beyond the ken of the jurors whose sole and exclusive function it was to make that determination. "While it would have been entirely proper to permit [Dr. Campion] to testify to relevant facts within his knowledge [and expertise], it was for the jury, and not for him, to say what conclusions should be drawn from the same." *Tiller v. State*, supra at 433 (3).

It is clear that appellant preserved the right to enumerate as error on appeal the admission of Dr. Campion's opinion testimony. See generally *Woolfolk v. State*, supra at 556 (2). Appellant raised a viable objection to the original question posited to Dr. Campion as an invasion of the province of the jury. When, after the colloquy, the trial court ruled that it would allow the rephrased questions to be asked, appellant indicated his continued objection to the second of the rephrased questions. Immediately upon Dr. Campion's giving of the inadmissible testimony in the presence of the jury, appellant renewed his objection for the record. Under these circumstances, it would be a misstatement of the record to suggest that appellant failed to preserve his right to enumerate the admission of Dr. Campion's testimony as error on appeal. Compare *Boatner v. Kandul*, 180 Ga. App. 234 (3) (348 SE2d 753) (1986); *Glisson v. State*, 165 Ga. App.

342, 343 (5) (301 SE2d 62) (1983); *Jackson v. State,* 146 Ga. App. 736 (1) (247 SE2d 512) (1978). Accordingly, we hold that the trial court erred in allowing the erroneous opinion testimony of Dr. Campion into evidence over appellant's objection. "No evidence can be admitted against him, that is not legal, according to the rules of evidence, as they obtain in other cases on the criminal side of the Court. The *opinion* of [Dr. Campion], that [appellant] is guilty of the offense charged, is clearly illegal evidence, and ought not to be admitted." (Emphasis in original.) *Allen v. State,* supra at 494 (1).

3. Appellant further enumerates as error certain other portions of the testimony of Dr. Campion and portions of the testimony of two other expert witnesses called by the State. We have reviewed each instance cited by appellant as error. In some instances, there was a failure to preserve the right to enumerate the testimony as error on appeal. In other instances, the objection which was raised below differs from that asserted by appellant in his enumeration of error on appeal. Accordingly, the enumeration of the admission of these other instances of expert testimony presents nothing for review.

4. Appellant's remaining enumerations need not be addressed, as the issues raised therein are not likely to recur on retrial. See generally *Guilford v. State,* 258 Ga. 253 (2) (368 SE2d 116) (1988).

*Judgment reversed. Birdsong, C. J., Deen, P. J., Sognier, Pope and Benham, JJ., concur. Banke, P. J., concurs specially. McMurray, P. J., and Beasley, J., concur in part and dissent in part.*

BANKE, Presiding Judge, concurring specially.

I agree with all that is said in Divisions 2, 3, and 4 of the majority opinion. I also agree with the holding in Division 1 that the appellant was not entitled to examine the materials which had been reviewed by one of the state's expert witnesses prior to his taking the stand. However, for what it is worth, I disagree with the majority's evident conclusion that *Caviness v. State,* 180 Ga. App. 792 (3) (350 SE2d 813) (1986), would have mandated a different result.

The majority reads *Caviness* as having held that a criminal defendant has the right to review "any and all . . . materials which a witness for the State may have reviewed at some indefinite point in time prior to his actually being called to testify. . . ." There is no such language in that decision. In fact, *Caviness* merely held that a defendant was entitled to see notes made by a police witness regarding the content of his (the defendant's) in-custody statement, where the witness had reviewed those notes *"immediately* prior to trial" to refresh her recollection. Id. at 793. (Emphasis supplied.) Normally, of course, notes used by a witness to refresh his recollection immediately prior to trial would either be in the courtroom itself or close enough to it to be readily available. I can find no holding nor any implication

in *Caviness* that a defendant is entitled to discover "any and all . . . materials which a witness for the State may have reviewed at some indefinite point in time prior to his actually being called to testify."

Nevertheless, regardless of how broadly or restrictively Division 3 of *Caviness* is construed, I agree that it cannot be reconciled with Division 9 of the Supreme Court's decision in *Catchings v. State*, 256 Ga. 241 (347 SE2d 572) (1986), holding that the right to review notes utilized by a prosecution witness to refresh his recollection extends only to notes used for that purpose "during the trial." Consequently, I agree that, to the extent of this inconsistency, *Caviness* must be overruled.

BEASLEY, Judge, concurring in part and dissenting in part.

1. I concur in Division 1 of the majority opinion.

2. I respectfully dissent as to part of Division 2, which addresses the enumeration that the court erred "when it permitted, over repeated objection, prosecution witnesses to give their opinions that the victim had been sexually abused."

The portion with which I cannot concur relates to Dr. Campion's testimony: "I believe there was a sexual involvement between her and her stepfather on more than one occasion from a period of her first grade up until and including the fourth grade." The majority holds that in allowing this testimony, the court erred because the expert gave his opinion on the ultimate issue in the case, i.e., defendant's guilt or innocence of the charged crime of molesting his stepdaughter in a specific way and with a specific intent.

Defendant's counsel expressly did not have objection to the question whether the expert had an opinion as to whether or not the child had been "sexually involved." During argument before the trial court, a distinction had been made between that word description and "molested," which defendant contended called for an opinion as to whether defendant had committed a crime. The trial court had accepted the defendant's argument that the use of "molested" invaded the jury's province, because one of the charges was "child molestation." So the substitute words were used.

The question, then, is whether Dr. Campion was legally permitted to testify that, based on his professional training and experience and application thereof in interviewing, testing, and evaluating the child, it was his opinion that the child had experienced sexual involvement with her stepfather. The trial court allowed this identification because identity of the person was part of the objective of the professional examination and an inextricable part of the professional conclusion reached by the application of professional means.

The trial court was correct. "The opinions of experts on any question of science, skill, trade, or like questions shall always be ad-

missible; and such opinions may be given on the facts as proved by other witnesses." OCGA § 24-9-67.

Dr. Campion's opinion that there had been a sexual involvement between the child and her stepfather was based on psychological testing and professionally structured interviews from which a layman could not knowledgably draw conclusions insofar as their results and the interpretations thereof are concerned.

Dr. Campion gave a detailed account and explanation of the basis for his opinion and how it was arrived at, with no objection as the methods and tests were described and what the child told him was repeated. To ask the jury to step into the shoes of this expert to analyze the results of the tests and the interviews and the demeanor of the child during these would require the jurors to apply the same expert training and experience, which they did not have, to reach the conclusions of fact which the expert reached. Just because the objective of the interviews and tests was to ascertain whether the child had been sexually abused by the person she identified, and this depended on whether the expert found verity in the child's statements, does not detract from the fact that this was a question where "skill" and "science," in the words of the statute, were employed. The expert offered "a method of proving the fact" which was beyond the average layman's comprehension in the testing context. Cf. *Williams v. State*, 254 Ga. 508, 511 (330 SE2d 353) 1985.

Even if the strictly opinion testimony had been excluded, it is perfectly clear that the opinion of this witness, as well as two other expert witnesses, was that the child had been sexually involved with Mr. Miller. The whole tenor of their testimony showed that. Each acted on the information received from the child in a manner consistent only with the belief that sexual abuse had occurred as she claimed. Each dealt with the child as a victim of sexual abuse.

It remained with the jury to determine ultimately whether defendant did in fact commit acts of child molestation and aggravated sodomy as explicitly charged in the indictment. *State v. Butler*, 256 Ga. 448 (349 SE2d 684) (1986). The jurors were free to reject the opinions of the expert, as the court charged. The defendant was free to attack the expert's methods of deducing his opinion, which was a professional opinion arrived at on the basis of training and experience and which was not binding on the jury. "[T]he opinion was one of fact, and was not inadmissible as a legal conclusion . . . or a conclusion constituting a mixture of law and fact . . ." *State v. Butler*, supra at 450.

Were the majority and concurring opinions correct, the testimony of an expert such as the psychologist in particular could never be utilized in child molestation cases, because to allow the psychologist to describe all the tests administered and the course of the scientifically-

devised interview without the psychologist's analysis would require an untrained jury to make that analysis itself. Better it is for the expert to give the results which he has reached, let them be attacked by a thorough and sifting cross-examination, and leave to the jury the acceptance or rejection of such results upon an application of the rules relating to evidence as given in charge.

Moreover, it was abundantly clear from other unobjected-to testimony that Dr. Campion had concluded that the identity of the person with whom the child experienced sexual involvement was her stepfather. At the outset of his testimony he stated that the purpose of his evaluation of the child was to give his impressions with regards to allegations of sexual abuse from her stepfather. He examined the child at the request of her mother, her mother's attorney, her father's attorney, and a judge. He described in great detail the method of interview, the reasons for certain approaches, the tests given plus their results and meanings, and the statements made and behavior exhibited by the child. This was not objected to.[1]

In the test in which she was asked to draw a family tree, he stated: "The family constellation was that she did not include her stepfather as part of her bonding process and that she included her natural father, . . . she did not include her stepfather in that picture. The purpose of that is to attempt to establish the bonding process, who she sees as the individuals in her life that are significant to her in terms of important relationships."

He conducted tests on other family members which excluded them.

In explaining that portion of the interview of the child on the subject of sex abuse, Dr. Campion testified that: "I open up with questions that I would hope would not be leading. The kind of questions I ask are, 'How do you get along with your stepfather,' and 'Is there anything that's ever happened between you and your stepfather that concerns you'—that type of question. With [child's name] the rapport was established rather quickly and she was able to respond that there had been something that happened between her and her stepfather that wasn't right, and she began to relate an incident that occurred earlier in the summer; I believe it was in June, approximately that, sometime around that time in 1986; and we began from that point, then."

In explaining the interview process which is conducted by the professional as part of his attempt to verify or discredit the child's

---

[1] As to the testimony of the experts, defense counsel explained his position: ". . . I have not protested when people who have the discipline that relates to the nature of the offense committed here where information has been imparted to them as part of ongoing treatment or evaluation and so on. I believe that that may properly come in."

story, he described some of the checks and balances used to validate it, such as the asking of professionally developed questions which would elicit answers "that a child would not be able to fabricate."

He described the three areas he wanted "to check out rather quickly," this being a "sexual abuse" case: "Number one, did this occur with the alleged perpetrator, or did it occur with some other child; was this a part of the sexual play with some child. Is this a result of watching an X-rated movie or late-night HBO or something. Is this a result of seeing some dirty magazine or whatever. I want—or, in number three I want to make sure, is this something that happened to the child or is this something that a vengeful parent brain-washed the child into saying."

After further explication along this line, Dr. Campion testified: "In my opinion, to summarize that, I do not believe that her story is a result of confusion with somebody else, some other age mate or someone else; I don't believe that it was a result of watching TV or reading some pornographic literature, nor do I believe that she was, quotes, brain washed into saying this. I think this is a spontaneous answer—a spontaneous relating of an event that happened." He then was asked, and talked about, cases in which the children's stories were found to be false, relating how falsity is detected.

In the effort to ferret out falsity, he described giving the child in this case the task of drawing her family. He explained: "they will draw who they consider to be their family and they'll put in that picture who they're bonded towards. Now, that's just part of a lot of things we look at in the pictures, but in this case, that's significant. If [child's name] would have included her stepfather in the pictures as somebody who is—as somebody she's bonded to, it would have made me very suspicious as to any problems going on between them, because a child's not going to include somebody who they—they're having significant problems with."

He also related other tests and evaluations he conducted to verify her story that she had sexual contacts with her stepfather, and he stated that he found verification. (T 169) In concluding this line, he stated: "I felt that she was responding in a typical way that a child with her abilities would respond. She was fairly accurate in her accounts of recalling what happened, . . . ." He testified in detail what the child told him had happened in relation to defendant, and how she communicated this to Dr. Campion.

He described a test conducted during clinical interview in which he asked the child what she would wish for if she had three wishes. One was that she would not have to continue to be with her stepfather, which Dr. Campion considered out of the ordinary. Then comes the objected-to question and the long hearing outside the jury's presence, which has been described.

Defense counsel thereafter cross-examined the witness at length about the methods he used in his evaluation and about his conclusions. He also sifted through what and who prompted the evaluation and what its purpose was, asking many questions to undermine the psychologist's conclusion that the child was relating what actually happened to her insofar as sexual contact with her stepfather was concerned.

For example: ". . . [the prosecutor] . . . asked you whether it was not a fact that the conclusions that you've drawn in this case, the very essence of the conclusions that you have drawn in this case, necessarily depend on the truthfulness of [child's name]? Answer: "It depends on her ability to understand and relate truth; yes. That's a—I hate to use the word truth because that's a very philosophical statement, but I would say it's her ability to perceive reality would be a better way to put it and to accurately report reality." Question: "Doctor, are you suggesting that there would be a speck of validity to your conclusions if [child's name] had been lying?" Answer: "If she was not perceiving reality correctly, there would be no basis to, you know, to accept information from her."

In addition to cross-examining about the verification methods used with respect to the identity of assailant as defendant, he also cross-examined about the doctor's exclusion of other males.

One of defendant's exhibits is a letter from the doctor to the attorney for the child's mother. It quotes a part of a letter from that attorney to the doctor: "she requested and the Court ordered your examination of the child for the purpose of trying to determine if there is any truth to the matter set forth in the petition." The doctor writes further in his letter: "The releasing of reports to appropriate individuals may be something that should be taken in context with regards to the whole issue of confidentiality and privileged communication. The Confidentiality Act requires a psychologist to report abused or neglected children that he comes in contact with in regards to his professional or official capacity. The psychologist is protected from liability under the Confidentiality Act . . . , if he reports such information. There are also references made to this in the Abused and Neglected Child Reporting Act . . . Because I was aware of the situation through my professional capacity, I probably have referred this material to an appropriate authority such as a judge."

With all of this unobjected to and deliberately introduced evidence before the jury, it simply cannot be said that the jury learned about the psychologist's opinion of who the perpetrator was, or learned any more about this opinion, when the psychologist made the statement which now is being held to require retrial.

In sum, there was no reversible error in this connection, for three reasons:

1) The belief of the expert, that there had been a sexual involvement between the child and her stepfather during a particular period of time, was a factual conclusion "which jurors would not ordinarily be able to draw for themselves; i.e., the conclusion is beyond the ken of the average layman." *Smith v. State*, 247 Ga. 612, 619 (277 SE2d 678) (1981). The jury would not be equipped to apply the professional tools which the psychologist testified were used as a basis for his conclusion, analyze and decipher them as though the jurors were trained and experienced professionals, and reach a conclusion whether the subject of the examination was relating reality. There is no violation of OCGA § 24-9-67.

Even though his opinion approached the ultimate issue of whether defendant had committed the crimes of child molestation and aggravated sodomy as alleged in detail in the indictment and as legally defined, it would not be inadmissible, according to *Smith*. It was not a legal conclusion, as differentiated in *State v. Butler*, 256 Ga. 448, 450, supra.

2) If it was error to permit the jury to consider the statement, the error is harmless. Throughout cross-examination, defense counsel attacked the witness' "conclusions" and elicited testimony about them, including the identity of the perpetrator. *Robinson v. State*, 229 Ga. 14, 16 (1) (189 SE2d 53) (1972); *Chalker v. State*, 184 Ga. App. 596, 597 (2) (362 SE2d 152) (1987); *Fields v. State*, 180 Ga. App. 771 (350 SE2d 488) (1986).

3) Considering the setting in which the statement was made, and the context in which it was spoken, it is harmless error if error. As to setting, the witness had been called as a State's witness, and he had testified at great length about how he had verified the child's story. It would be preposterous to say that the jury did not know, but for the statement, that the psychologist who tested the little girl's story upon request of a court, drew the professional conclusion that her naming the man on trial was a statement of reality.

The second material fact about setting is that the court fully charged the jury that the weight and credit to be given to expert witness' opinion is for the jury to decide. "You're not bound or concluded by the opinion testimony of any witness, expert or otherwise," the court made clear as part of its instructions to the jury on this subject, and "You are made by law the sole and exclusive judges of the credibility or believability of the witnesses." Thus there was no invasion of the jury's domain by the expert's statement.

As to context, the witness had said the same thing though in different words, over and over again without objection. The jurors were not told any more about the doctor's opinion as to the identity of the perpetrator, by this statement, than they already knew and defense counsel's later questioning elicited in repetition.

The whole point of the examination and evaluation was to verify the child's story that she had been sexually abused by her stepfather. That is what the psychologist verified. It was left up to the jury to accept or reject his verification. That part of it which included the identity of the perpetrator does not decide the legal issue of guilt or innocence of a legally-defined crime for the jury. Instead, it gave them expert opinion with respect to truth or falsity. They were charged to accept or reject this evidence as they deemed it deserved.

Identity is an issue of fact and may be proved indirectly, by circumstantial evidence which tests the veracity of the accuser. And if there is an expert way to test that veracity, the expert opinion is relevant, albeit not determinative of the final verdict. The defendant had explicitly accepted this, insofar as the child's claim of sexual involvement itself was concerned.

It is not necessary to retry this case because of one statement which was an express form of what had already been said, even if in different words and actions. We are not dealing here with the question of a fair trial, or a constitutional infirmity, but with a rule of evidence which the Supreme Court of Georgia has departed from at least to some degree. It chose instead to hold "in accord with the modern view as exemplified by Rules 702, 704 of the Federal Rules of Evidence, . . . ." *Smith*, supra at 619. The Court expressly reiterated its more open position in *State v. Butler*, 256 Ga. 448, 450, supra, and it further clarified it in *Allison v. State*, 256 Ga. 851, 852 (3-5) (353 SE2d 805) (1987). We should follow.

DECIDED NOVEMBER 22, 1988 —
REHEARING DENIED DECEMBER 12, 1988 —

*Herbert Shafer*, for appellant.
*Frank C. Winn, District Attorney*, for appellee.